# FILED

MAR X **3** 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

U₋ S₋ DISTRICT COURT
E. DISTRICT OF MO.

Securities and Exchange Commission,

Plaintiff,

vs.

TALX Corporation,

Defendant.

# **4 : 0 5CV00368** HE A

**Civil Action No.**

## COMPLAINT

Plaintiff the Securities and Exchange Commission ("Commission"), for its complaint,
alleges as follows:

1.      Defendant TALX Corporation ("Defendant" or "TALX"), a Missouri corporation with its
principal place of business in St. Louis, Missouri, provides automated employment verification
services and automated employee self-service applications. TALX became public in 1996 and
its common stock is registered with the Commission pursuant to Section 12(g) of the Securities
Exchange Act of 1934 ("Exchange Act"). The company's fiscal year ends March 31, and it files
reports on Forms 10-K and 10-Q. TALX common stock is quoted on the NASDAQ National
Market System.

2.      The Commission brings this action pursuant to the authority conferred upon it by Section
20 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t] and Section 21 of the
Exchange Act [15 U.S.C. § 78u] to impose a civil money penalty to address Defendant TALX's
wrongdoing.

3.     The Commission seeks an order requiring Defendant TALX to pay $2,500,000 in civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

4.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].  Venue lies in this Court pursuant to Section 22(a) of the Securities Act and Section 27 of the Exchange Act.

5.     Certain of the transactions, acts, practices and courses of business constituting the violations of law alleged herein occurred within this judicial district.  Moreover, Defendant TALX's principal place of business is in this district.

6.     In connection with the transactions, acts, practices, and courses of business described in this Complaint, Defendant TALX, directly or indirectly, has made use of the means or instrumentalities of interstate commerce, of the mails, of the facilities of a national securities exchange, and/or of the means and instruments of transportation or communication in interstate commerce.

7.     During fiscal 2001, and through a secondary offering of common stock completed on August 3, 2001, TALX placed emphasis on meeting its internal and external financial projections, and highlighted its earnings growth to the market.  For example, in an October 2000 investor conference call concerning the company's 2001 second quarter earnings, a TALX executive stated, "We believe that the trend of the last 7 quarters of delivering substantial [earnings per share] increases, and 3 quarters of delivering 50 plus percent quarter over quarter increases, will continue."  Similarly, on January 17, 2001, TALX announced a 50% increase in

2

its third quarter earnings per share ("EPS") and a 53% increase in its EPS for the nine months ended December 31, 2000.

8.     During early 2001, TALX began to consider raising additional capital through a secondary stock offering. On April 25, 2001, TALX announced it had met its fourth quarter and year ended March 31, 2001 EPS target, and that its EPS had grown by more than 50%. After informing the market in its April 26, 2001 investor conference call that TALX expected its 2001 earnings trend to continue through 2002, TALX set the stage for a secondary offering.

9.     On June 22, 2001, TALX filed an S-3 registration statement with the Commission. On June 28, 2001, TALX filed its 2001 Form 10-K. TALX filed three amendments to its S-3 registration statement in July and August 2001, two of which incorporated the financial statements contained in TALX's 2001 Form 10-K. TALX's 2001 financial results were also contained in TALX's Forms 10-K filed on July 1, 2002 and May 22, 2003, and in TALX's Forms 8-K filed on July 16, 2001, July 18, 2001, and on June 25, 2002.

10.    On July 18, 2001, TALX reported record first quarter 2002 earnings with earnings growth exceeding 50%. Between April 2000 and August 3, 2001, TALX's stock price had climbed 240%, from approximately $10 to $34. Between April 26, 2001 and August 3, 2001, TALX's stock price had increased from approximately $26 to $34. On August 3, 2001, TALX filed with the Commission a prospectus and completed its secondary offering of 2.95 million shares of common stock for $32 per share, raising approximately $82 million for the company.

11.    TALX met its 2001 financial targets and increased its stock price through accounting misstatements which inflated falsely TALX's financial performance. TALX's misstatements involved an improper bill and hold transaction and other premature revenue recognition; capitalizing costs relating to a patent infringement claim that should have been expensed; and

3

expensing bonuses in the wrong period. As a result of these misstatements, TALX overstated fiscal 2001 income by approximately $2.1 million, or 65%.[1]

12. First, TALX used a fraudulent bill and hold transaction to inflate fiscal 2001 income. In early fiscal 2001, TALX desired to characterize a transaction with a TALX Customer Premises System ("CPS") client as a "bill and hold" sale. The transaction did not meet the requirements of a bill and hold sale under generally accepted accounting principles ("GAAP") because the bill and hold was not at the customer's request; there was no valid business purpose; the customer refused to take title to the TALX systems until delivery; and normal billing terms were modified. As a consequence, TALX improperly recognized $52,000 of income in the second quarter ended September 30, 2000, thus enabling the company to meet consensus EPS targets for the six months ended September 30, 2000.

13. Second, TALX recognized fraudulently implementation service revenue on CPS transactions. TALX recognized CPS implementation service revenue using the percentage-of-completion method of accounting as prescribed by GAAP. Under that method, TALX should have recognized revenue, costs, and gross profit as it progressed toward completion on CPS projects. TALX, however, did not have sufficient internal controls or other accounting policies and procedures in place to measure and record accurately the work performed on CPS projects and therefore to recognize the appropriate amount of service revenue. The breakdown in internal controls allowed TALX to recognize prematurely implementation service revenue and manipulate the revenue to meet earnings targets. As a result, TALX overstated CPS service income by $358,000, or 11%, in 2001. Without this revenue, TALX would have missed its EPS

---

[1] All references to income are pre-tax.

4

targets for the quarters ended September 30, 2000 and December 31, 2000, and for the year ended March 31, 2001, instead of meeting or exceeding its targets as it reported.

14.     Third, TALX fraudulently capitalized costs relating to a patent infringement claim. On or about March 13, 2001, TALX entered into a license agreement with the patent holder relating to the claim. TALX's payment to the patent holder included payment for claimed past use of the patented technology, which was a period cost with immediate expense recognition under GAAP. In its 2001 Form 10-K financial statements, however, TALX capitalized the payment. By capitalizing the payment, TALX overstated income by $1.6 million, or 49%, in fiscal year 2001. Had TALX properly expensed the $1.6 million, TALX would have fallen short of its previously announced 50% earnings growth rate.

15.     Fourth, TALX fraudulently expensed bonuses paid to three executives. On or about April 12, 2001, three TALX executives gave up half their bonuses, in aggregate totaling $158,000. One month later, on or about May 15, 2001, TALX paid bonuses totaling $158,000 to the executives. GAAP requires that administrative salaries be expensed in the period of the event when the cost occurred. The reinstated bonuses should have been expensed in fiscal 2001, but TALX improperly expensed them in fiscal 2002. As a result, TALX overstated its fiscal 2001 income by $158,000, or 5%.

16.     In addition to the fraudulent misstatements referenced above, TALX improperly used the percentage-of-completion method of accounting for certain other service transactions prior to and in its 2001 fiscal year. Pursuant to GAAP, the service revenue should have been recognized on a straight-line basis. After TALX's auditors brought this to the company's attention, TALX restated its revenue. As a result of using the wrong method of revenue recognition, TALX overstated income by approximately $2 million in 2001.

5

17.     The fraudulent misstatements, in combination with the unintentional use of the wrong

revenue recognition method, resulted in TALX overstating its 2001 income by approximately

122%. As a consequence, TALX should have reported an earnings decline for fiscal 2001, not

the inflated 56% growth originally reported.

18.     The combined misstatements inflated artificially TALX's 2001 stock price leading up to

TALX's August 3, 2001 secondary offering. Without the combined misstatements, TALX

would have received less than the $82 million realized in its secondary offering.

19.     As a result of the conduct described above, TALX made material financial

misrepresentations in Forms 8-K, 10-K and 10-Q for fiscal years 2001 through the second

quarter of 2004, and in its fiscal 2002 registration statement.

## FIRST CLAIM FOR RELIEF
### (Section 17(a) of the Securities Act)
### 15 U.S.C. § 77q(a)

20.     Plaintiff repeats and realleges paragraphs 1 through 19 above.

21.     By engaging in the conduct described herein, TALX violated Section 17(a) of the

Securities Act.

## SECOND CLAIM FOR RELIEF
### (Section 10(b) of the Exchange Act and Rule 10b-5)
### 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5

22.     Plaintiff repeats and realleges paragraphs 1 through 19 above.

23.     By engaging in the conduct described herein, TALX violated Section 10(b) of the

Exchange Act and Rule 10b-5 thereunder.

## THIRD CLAIM FOR RELIEF
### (Section 13(a) of the Exchange Act and
### Exchange Act Rules 12b-20, 13a-1, 13a-11 and 13a-13)
### 15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13

24.     Plaintiff repeats and realleges paragraphs 1 through 19 above.

25.     By engaging in the conduct described herein, TALX violated Section 13(a) of the

Exchange Act and Rules 12b-20, 13a-1, 13a-11 and 13a-13 thereunder.

### FOURTH CLAIM FOR RELIEF
### (Section 13(b)(2) of the Exchange Act)
### 15 U.S.C. § 78m(b)(2)

26.     Plaintiff repeats and realleges paragraphs 1 through 19 above.

27.     By engaging in the conduct described herein, TALX violated Section 13(b)(2) of the

Exchange Act.


### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court order Defendant

TALX to pay a civil money penalty in the amount of $2,500,000 pursuant to Section 20(d) of the

Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §

78u(d)(3)].

Dated: March 2, 2005

7

Respectfully submitted,

Mary S. Brady
Ian S. Karpel

Attorneys for Plaintiff
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO 80202
Phone: (303) 844-1000
Fax: (303) 844-1010

8

t (
V1

Henry E. Autrey

DECK TYPE: St. Louis - Civil

DATE STAMP :03/03/2005 @ 13:00:11

CASE NUMBER  4:05CV00368
  E &10H